James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON C. HANSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM DEBT RELIEF, LLC,<br><br>Defendant. | Case No.: 3:26-cv-00708<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Jon C. Hanson ("Plaintiff" or "Hanson"), individually, and on behalf of all others similarly situated, through his undersigned counsel, and for his Class Action Complaint against Defendant, Freedom Debt Relief, LLC ("Defendant" or "Freedom Debt Relief"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1.      Hanson brings this case to protect his privacy rights; namely, the right to be left alone from unwanted telemarketing communications.

2.      Hanson is a retired member of the United States Air Force, in which he served nearly twenty-four years. Hanson was deployed nearly a dozen times overseas and proudly fought for our country.

3.      Hanson is now fighting a different battle – getting telemarketers like Defendant to stop placing robocalls to his phone despite not providing permission to receive such calls and despite his phone number being registered on the National Do-Not-Call Registry ("DNC List").

4.      Specifically, Hanson brings this suit in an effort to stop companies like Defendant placing prerecorded and/or artificial voice calls, i.e. robocalls, to him and the putative class (defined below) members' phones despite: (1) Defendant did not have permission from Plaintiff; and (2) the fact that Plaintiff and the putative class members phone numbers were registered on the National Do-Not-Call Registry ("DNC List"). Such communications violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA"), and the TCPA's corresponding regulations.

5.      When persons like Hanson and the putative class members do not provide "prior express consent" to companies like Defendant to place robocalls to their phones, the TCPA prohibits such companies from placing these calls.  The TCPA provides that each person who receives such communications despite being on the DNC List is entitled to $500 per violation, and up to $1,500.00 per violation determined to be willful.

1
2
3
4
5
6

6.    When persons like Hanson and the putative class members have their phone numbers registered on the DNC List, companies like Defendant have an affirmative obligation not to contact such persons with telephone solicitations, in accordance with the TCPA's protections. The TCPA provides that each person who receives such communications despite being on the DNC List is entitled to up to $500 per violation, and up to $1,500.00 per violation determined to be willful.

7
8
9
10
11
12

7.    In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

13
14
15
16
17

8.    The problem with receiving unwanted telemarketing robocalls is a problem that most people in this country, like Hanson, frequently face. For example, in 2025 alone, approximately 52.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 15, 2026).

18
19
20
21

9.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

22
23
24
25
26
27

10.    In fact, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls.  Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

28

11.    The private right of enforcement of the TCPA is critical to stopping the

proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

13.    Defendant is a Delaware limited liability company with its principal place of business in the San Mateo, California.

14.    This Court has personal jurisdiction over Defendant because Defendant's headquarters are in San Mateo, California, its principal place of business is in San Mateo, California, Defendant's registered agent is in California, Defendant transacts business in California, directly markets its products and services in California, and sells various services in California, and for the reasons otherwise set forth in this Complaint.

15.    Defendant has continuous and systematic contacts with the State of California.

16.    Hanson is a citizen of the State of North Dakota and has been a citizen of North Dakota at all times material to this Complaint.

17.    Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

## PARTIES

18.    At all times relevant to this Complaint, Hanson was, and is still, the owner of a cell phone, with a phone number of 580-XXX-5594.

1    19.    Hanson registered his phone number on the DNC List on February 28,

2    2010, for the purpose of stopping contact by telemarketers/telephone solicitors,

3    including, but not limited to, Defendant.

4    20.    The monthly bill associated with Hanson's phone number is issued in his

5    name, and not in the name of a business.

6    21.    Hanson uses his cell phone primarily for personal purposes, such as

7    communicating with friends and family members.

8    22.    Defendant is a Delaware Limited Liability Company, with its principal

9    place of business in San Mateo, California. Defendant has at all times relevant to this

10    Complaint been in good standing to transact business in the State of California, and

11    throughout the United States.

12    23.    Defendant's business is offering debt settlement services.  Typically,

13    Defendant's clients have credit card or other consumer debts and Defendant attempts

14    to settle those debts for less than the balance.  Consumers then pay Defendant a

15    percentage of the amount saved.

16    24.    Defendant's website is www.freedomdebtrelief.com.

17    25.    Defendant's website states that Defendant is "one of the largest debt

18    settlement companies in the United States, specializing in helping consumers resolve

19    unsecured debt, particularly credit card debt."

20    26.    Defendant markets its debt settlement services, in part, through

21    telemarketing, including the placing of phone calls to consumers.

22    **DEFENDANT'S CALLS TO PLAINTIFF**

23    27.    Hanson never inquired of, or expressed interest in, Defendant's services.

24    On information and belief, neither did the putative class members.

25    28.    Hanson was never a previous customer of Defendant, nor did he have an

26    established business relationship with Defendant.  On information and belief, neither

27    did the putative class members.

28    29.    Hanson never entered his information on Defendant's website, nor

1   provided any form of consent to be contacted by or on behalf of Defendant.

2        30.    Despite being registered on the DNC List for over a decade and not

3   inquiring of or expressing interest in Defendant's services, Hanson began to receive

4   calls from or on behalf of Defendant.

5        31.    On March 8, 2023, at approximately 2:51 p.m. CST., Defendant or

6   someone acting on its behalf placed a prerecorded and/or artificial voice call to Hanson.

7        32.    Hanson could tell the call utilized an artificial and/or prerecorded voice

8   because of the unnatural pauses and cadence when speaking with Defendant's

9   "representative."

10       33.    The representative stated in a prerecorded manner, "Hi!  My name is

11   Ashley Johnson. How are you doing today?"

12       34.    After Hanson responded, "good, Ashley" the caller unnaturally responded

13   stating, "Well, I'm calling you from Freedom Debt Relief.  There is a promotion on an

14   existing debt you owe on your credit cards and you are qualified for a debt forgiveness

15   on your bills as the new year 2023 begins." Confirming the prerecorded nature of the

16   call, the representative then stated, "Please take part in two minutes of a **live call** and

17   speak with a representative.  Would you like me to connect you with a certified debt

18   consultant?"

19       35.    On March 24, 2023, at approximately 12:43 P.M. CST Defendant or

20   someone acting on its behalf placed a prerecorded and/or artificial voice call to Hanson.

21       36.    Hanson could tell the call utilized an artificial and/or prerecorded voice

22   because of the unnatural pauses and cadence when speaking with Defendant's

23   "representative."

24       37.    The representative stated in a prerecorded manner, "Hi!  My name is

25   Ashley Johnson. How are you doing today?"

26       38.    After Hanson responded, "great, Ashley.  How can I help you?" The caller

27   unnaturally responded stating, "Well, I'm calling you from Freedom Debt Relief.

28   There is a promotion on an existing debt you owe on your credit cards and you are

qualified for a debt forgiveness on your bills as the new year 2023 begins." Confirming the prerecorded nature of the call, the representative then stated, "Please take part in two minutes of a **live call** and speak with a representative.  Would you like me to connect you with a certified debt consultant?"

39.    Hanson seeks recovery individually, and on behalf of the putative class members, for the calls placed to them as detailed in this complaint.

## DIRECT AND VICARIOUS LIABILITY

40.    Without the benefit of discovery, and because Defendant disclosed its identity in the calls at issue, Hanson assumes Defendant directly placed the calls at issue.

41.    However, if some or all the calls were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

42.     On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal

1   citations omitted).

2        43.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA

3   liability, including the assertion that a seller's liability requires a finding of formal

4   actual agency and immediate direction and control over third parties who place a

5   telemarketing call. *Id*. at 6587 n. 107.

6        44.    The evidence of circumstances pointing to apparent authority on behalf of

7   the telemarketer "should be sufficient to place upon the seller the burden of

8   demonstrating that a reasonable consumer would not sensibly assume that the

9   telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

10       45.    If Defendant directly placed the calls at issue to Hanson and the putative

11   class members, Defendant is directly liable for the placing of those calls.

12       46.    However, Defendant may have hired, encouraged, permitted, and enjoyed

13   the benefits of mass telemarketing by third-party telemarketers.

14       47.    If Defendant did not directly place the calls to Hanson and the putative

15   class members, Defendant's third-party telemarketers had actual and/or apparent

16   authority to act on behalf of Defendant.

17       48.    Likewise, Defendant also ratified its agents' violations of the TCPA by

18   accepting sales from unlawful telemarketing communications.

19       49.    Defendant controlled or had the right to control the marketing activities of

20   those acting on its behalf.

21       50.    Defendant acted as principals to telemarketing agent(s) who were acting

22   on its behalf.

23       51.    Defendant is not permitted under the law to outsource and contract its way

24   out of liability by directing and benefitting from its agents' TCPA violations.

25       52.    For the counts identified below, if Defendant directly placed the violative

26   communications at issue to Hanson and the putative class members, it is directly liable.

27   Alternatively, to the extent any calls were placed by a third-party agent(s) acting on

28   Defendant's       behalf,    Defendant    is    vicariously    liable    for    those    unlawful

1  communications.

## CLASS ALLEGATIONS

2

3      53.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3),

4  Plaintiff brings this lawsuit as a class action on behalf of herself, and all others similarly

5  situated. This action satisfies the requirements of Rule 23.

6

7      54.    Hanson seeks to represent the following classes (the "Classes"):

8      **Prerecorded Voice Class:** All persons in the United States who from four

9      years prior to the filing of this action through class certification to whom
       Defendant or someone acting on its behalf utilizing a pre-recorded or

10     artificial voice call, to the recipient's phone.

11

12     **DNC Class:** All persons in the United States who from four years prior to
       the date of the filing of this lawsuit until the date of class certification: (1)

13     to whom Defendant (or someone acting on its behalf) placed two or more
       calls messages during a 12-month period; (2) where the calls were made

14     for solicitation purposes, (3) whose number was registered on the DNC

15     List for more than 30 days at the time the calls were placed; (4) where the
       phone number to which the calls were placed was registered to an

16     individual, rather than a business.

17

18     55.    Hanson reserves the right to add administrative subclasses, or to amend

19  the definition of the proposed Classes, as this lawsuit proceeds.

20     56.    The members of the proposed Classes are so numerous that joinder of all

21  members is impracticable. Hanson reasonably believes that hundreds or thousands of

22  people have been harmed by Defendant's actions. The phone numbers of the members

23  of the proposed Classes are readily identifiable through records available to Defendant

24  or those acting on their behalf.

25     57.    Most members of the proposed Classes have suffered damages in an

26  amount such that it would make filing separate lawsuits by individual members

27  economically infeasible.

28     58.    On information and belief, Defendant has called, and continue to call,

1  people who have not consented to be contacted and whose numbers should have been

2  placed on the DNC List. It is reasonable to expect that Defendant will continue to place

3  such calls, absent this lawsuit.

4        59.    Common questions of law and fact exist as to all members of the proposed

5  Class and predominate over any questions affecting only individual members. The

6  questions of law and fact common to the proposed Class include, but are not limited

7  to:

8        a.     Whether the calls at issue placed by Defendant or on Defendant's behalf

9  utilized as prerecorded and/or artificial voice for the purposes of 47 U.S.C. § 227(b);

10       b.     Whether Defendant exercised valid methods of obtaining "prior express

11  written consent" before placing calls to consumers;

12       c.     Whether the calls at issue qualify as "telephone solicitations" for the

13  purposes of 47 U.S.C. § 227(c);

14       d.     Whether Defendant's conduct violates 47 U.S.C. § 227(b) of the TCPA;

15       e.     Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA;

16       f.     Whether an agency relationship exists between Defendant and anyone

17  placing calls on its behalf;

18       g.     Whether Defendant's manner and system of obtaining consumer

19  "consent" was legally deficient;

20       h.     Whether Defendant's conduct violates the rules and regulations

21  implementing the TCPA; and,

22       i.     Whether Defendant and the putative class members are entitled to

23  increased damages for each violation based on the willfulness of Defendant's conduct.

24       60.    Hanson's claims are typical of the claims of the members of the proposed

25  members of the Classes because his claims arise from the same practices that give rise

26  to the claims of the members of the proposed Classes and are based on the same legal

27  theories.

28       61.    Hanson and his counsel will fairly and adequately protect the interests of

the members of the proposed Classes. Hanson's interests do not conflict with the interests of the proposed Classes he seeks to represent, and he has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

62.     Hanson's counsel will vigorously litigate this case as a class action.

63.     A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed Classes in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed Classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed Classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

64.     In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

65.     Questions of law and fact, particularly the propriety of placing robocalls t persons, including to persons whose phone numbers were registered on the DNC List predominate over questions affecting only individual members.

66.     Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

//

//

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b) *et seq.* (Artificial or Prerecorded Voice Calls – Prerecorded Voice Class)

67.     Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this count.

68.     The TCPA provides, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice . . .  (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

69.     The TCPA also prohibits calls using an artificial or pre-recorded voice to "any residential telephone line" without prior express written consent. 47 U.S.C. § 227(b)(1)(B).

70.     The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

71.     The FCC's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2)

72.     The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

73.    The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 per violation.  47 U.S.C. § 227(b)(3).

74.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA of placing prerecorded or artificial voice calls without first obtaining prior express written consent to place such calls. *See* 47 U.S.C. § 227(b)(3).

75.    By placing artificial or prerecorded voice calls to Hanson's and the Prerecorded Voice Class members' cell phone numbers, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(b) and the TCPA's corresponding regulations.

76.    Defendant or those acting on its behalf willfully violated the TCPA when placing prerecorded voice calls to Hanson and the Prerecorded Voice Class members' cell phones.

77.    Hanson and the Prerecorded Voice Class members are entitled to damages of up to $500.00 per violation for each call made by Defendant or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Jon C. Hanson, individually, and on behalf of all others similarly situated, request that the Court:

a.    Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Prerecorded Voice Class, appointing Plaintiff as the class representative, and appointing Plaintiff's counsel as class counsel;

b.    Enter judgment in favor of Plaintiff and the Prerecorded Voice Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(b), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.    Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.    Enter judgment in favor of Plaintiff and the Prerecorded Voice Class for all applicable pre-judgment and post-judgment interest amounts;

e.    Enter judgment in favor of Plaintiff and the Prerecorded Voice Class for all costs; and,

f.    Award Plaintiff and the Prerecorded Voice Class such further and other relief the Court deems just and appropriate.

## COUNT II
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c), *et seq.* (DNC List Violations)

78.    Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

79.    The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

80.    This applies to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

81.    The penalty for each telephone solicitation placed in violation of the TCPA's restrictions on placing calls to phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

82.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting phone calls to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

83.    By placing telephone solicitations to Hanson and the DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

84.     Defendant and/or those acting on their behalf knew or should have known that Hanson's and the putative DNC Class members' phone numbers were registered on the DNC List.

85.     Defendant and/or those acting on their behalf willfully violated the TCPA when placing the telephone solicitations at issue to Hanson's and the putative DNC Class members' phones.

86.     Hanson and the putative class members are entitled to damages of up to $500.00 per violation for each communication by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Jon C. Hanson, individually, and on behalf of all others similarly situated, requests that the Court:

a.     Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed DNC Class, appointing Plaintiff as the Class representative, and appointing his counsel as class counsel;

b.     Enter judgment against Defendant and in favor of Plaintiff and the Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.     Enter a judgment in favor of Plaintiff and the DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.     Enter judgment in favor of Plaintiff and the DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e.     Enter judgment in favor of Plaintiff and the DNC Class for all costs, including the cost of class notice; and

f.     Award Plaintiff and the DNC Class members such further and other relief the Court deems just and appropriate.

1

## **DEMAND FOR JURY TRIAL**

2        Please take notice that Plaintiff Jon C. Hanson demands a jury trial.

3

4

5

6    Dated: January 22, 2026                      Respectfully submitted,

7                                                          MILLER SHAH LLP

8
                                                          */s/ Kolin C. Tang*
9                                                         Kolin C. Tang (SBN 279834)
                                                          Email: kctang@millershah.com
10                                                        James C. Shah (SBN 260435)
                                                          Email: jcshah@millershah.com
11                                                        8730 Wilshire Boulevard
                                                          Beverly Hills, California 90211
12                                                        Telephone: (866) 540-5505
                                                          Facsimile: (866) 300-7367
13

14

15                                                       BUTSCH ROBERTS & ASSOCIATES
                                                          LLC
16
                                                          */s/Christopher E. Roberts*
17                                                        Christopher E. Roberts (SBN 363586)
                                                          Email: CRoberts@butschroberts.com
18                                                        7777 Bonhomme Avenue, Suite 1300
                                                          Clayton, Missouri 63105
19                                                        Telephone: (314) 863-5700

20
                                                          *Attorneys for Plaintiff*
21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT                                        - 15 -